444 P.2d 602

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Carlos PEREZ, Defendant-Appellant.**

**No. 177.**

Court of Appeals of New Mexico.

Aug. 9, 1968.

Samuel A. Francis, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Warren O. F. Harris, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Judge.

Defendant was convicted of burglary of and larceny from a coin shop. He appeals, raising issues concerning (1) illegal search and seizure and (2) whether there is substantial evidence to support his conviction.

*Illegal Search and Seizure.*

A silent alarm at the coin shop signalled an answering service which notified the police. The police responded rapidly; Officer Garcia arrived at the scene approximately two minutes after the police were notified. As he drove up, Officer Garcia saw two men—the defendant and Deats. Defendant was sitting in the driver's seat of a white Chevrolet which was parked approximately ten feet from the door of the shop; the engine of this car was running. Deats was standing near the door of the shop looking toward or into the shop; glass in the door was broken. Subsequent-

ly, a third man, Montoya, was found inside the shop.

Officer Garcia directed defendant to stay in sight as he arrested and searched Deats. By then, Officer Kline had arrived. The two officers arrested defendant who was searched. Officer Garcia then departed, taking defendant and Deats to the police station.

"As soon as" Officer Garcia had left, Officer Kline looked inside the white Chevrolet. He observed a large brown box and a crowbar on the floorboard in the back. The box contained coins and smaller boxes which also contained coins. Through an open door, he observed a .45 automatic on the floor underneath the front seat. The officer characterized these observations as a "visible search." The owner of the coin shop also looked into the car and saw display trays, coin boxes and coins which he identified as belonging to him.

After making his observations, Officer Kline "secured" the vehicle. Subsequently, it was towed to the rear of the police station several miles away. "Immediately after the arrests had been made and we were at the station", the two officers removed the above items from the car. The gun, the crowbar and three photographs of the coins taken from the car were introduced as evidence against the defendant.

Defendant claims that the evidence taken from the car was obtained by a search and seizure in violation of the 4th Amendment of the United States Constitution. We assume, but do not decide, that defendant has standing to raise this question. See State v. Lucero, 70 N.M. 268, 372 P.2d 837 (1962); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Harper v. State, Nev., 440 P.2d 893 (1968); State v. Vassar, 7 Ariz.App. 344, 439 P.2d 507 (1968).

In contending that the search and seizure of the above identified items was a constitutional violation, defendant relies on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

In Preston, defendant and two companions had been seated in a car parked in a business district at night for five hours. Explaining their presence unsatisfactorily to the police, they were arrested, searched and taken to police headquarters. Their car was driven to the police station by an officer and then towed to a garage. After defendant had been booked, the car was searched for the first time. Various items were taken from the car which corroborated a subsequent confession of one of defendant's accomplices that they had intended to rob a bank.

Preston held that the items removed from the car were improperly used against defendant at his trial because the " * * * search was too remote in time or place to have been made as incidental to the arrest * * *." In so holding, it was pointed out that " * * * even in the case of motorcars, the test still is, was the search unreasonable." See also People v. Burke, 61 Cal.2d 575, 39 Cal.Rptr. 531, 394 P.2d 67 (1964); compare Dyke v. Taylor Implement Mfg. Co., Inc., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

The post-Preston decisions have emphasized the question of the reasonableness of the search. With the emphasis on "reasonableness", Preston has frequently been held inapplicable because of the circumstances involved in the particular case. People v. Webb, 66 Cal.2d 107, 56 Cal. Rptr. 902, 424 P.2d 342 (1967) reviews decisions which distinguish Preston in a variety of ways.

One of the decisions discussed in People v. Webb, supra, is Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68 (1965). In Price, burglars had taken two rolls of quarters. Officers looked inside a car which had been described to them as the getaway car and saw two rolls of quarters and some burglar tools. Defendant was arrested when he entered the car and taken

to the police station in a squad car. An officer drove defendant's car to the police station parking lot where it was searched. Speaking of Price, People v. Webb states:

"* * * the court held the seizure of the tools and rolls of quarters was incident to the arrest even though it occurred in the police station parking lot, because these articles were seen by the officers at the time the arrest was made. Since the officers could lawfully have taken possession of this evidence when they arrested the defendant, the fact that they delayed doing so for reasons of convenience did not render the subsequent seizure unreasonable. This rule has been uniformly followed in other federal courts (Rodgers v. United States (8th Cir. 1966) 362 F.2d 358, 362), in the courts of California (People v. Evans (1966) 240 Cal.App.2d 291, 299, 49 Cal. Rptr. 501) and in those of our sister jurisdictions (State v. Putnam (1965) 178 Neb. 445, 133 N.W.2d 605, 609)."

Price v. United States, supra, held the search in the parking lot was "* * * part of a continuing series of events which included the original arrest and continued uninterruptedly as lawful police investigation and action." The U. S. Supreme Court denied certiorari in Price. 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965).

■ We adopt the reasoning of Price as applicable here. The officers saw the items inside the car, had the car removed to the police station parking lot and there removed the items "immediately." This was a continuing series of events; the search and seizure was not unlawful, rather it was incident to defendant's arrest. See State v. Wood, 197 Kan. 241, 416 P.2d 729 (1966).

*Substantial Evidence.*

■ Defendant claims there is no substantial evidence to support the verdict and because of lack of substantial evidence the trial court committed fundamental error in allowing the case to go to the jury. He contends "There is no evidence other than appellant's presence at the scene of the crime to support a conclusion that appellant in any way participated in burglarizing of the shop and the taking of the coins." He asserts that he can only be held liable as an aider and abettor. He claims he cannot be an aider or abettor because there is no evidence showing that he shared the criminal intent or purpose of the principal. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967); State v. Ochoa, 41 N.M. 589, 72 P. 2d 609 (1937).

When Deats was searched at the scene, he had a pair of rubber gloves, a nylon stocking and ten dollars worth of coins in his pocket; a .25 automatic fell through his right pant leg. When Montoya was searched inside the building he had a nylon stocking, several watches, coins, and a slip of paper bearing the address of the coin shop. There was a pair of gloves beside him. However, when defendant was searched nothing incriminatory was found on his person. It is on this basis that defendant claims that there is nothing to show his participation in the crimes other than his presence.

Defendant overlooks various items of evidence. While his own testimony is largely exculpatory, he admits that he was with Deats and Montoya earlier in the evening and that he came to the coin shop with Deats. He was in the driver's seat of Montoya's car which was parked near the door of the coin shop with the engine running. He removed the .45 automatic from the front seat and put it on the floor underneath the seat. A trail of coins led from the coin shop to the car. Coins and a crowbar were in the car. On this evidence, which is substantial, the jury could infer that defendant shared a criminal intent and community of purpose with the other participants. State v. Ortega, 77 N.M. 7, 419 P.2d 219 (1966).

The judgment and sentence are affirmed.

It is so ordered.

SPIESS, C. J., and ARMIJO, J., concur.